UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | CAUSE N0. 3:05-CR-137(01)RM |
| ) | |
| CLIFFORD K. LAWSON, JR. ) | |

OPINION AND ORDER

On November 21, United States Magistrate Judge Christopher Nuechterlein found that no combination of conditions could reasonably assure the safety of the any other person and the community, and then granted the government's motion for pretrial detention of Clifford Lawson. Mr. Lawson moved for review of that order. 18 U.S.C. § 3145(b). It then came to light that the recording equipment in the magistrate judge's courtroom malfunctioned during the initial detention hearing, so the review of that order was conducted without the benefit of any evidence presented on November 21. Both sides presented evidence at the December 2 review hearing. For the reasons that follow, the court affirms the magistrate judge's order.

The government seeks detention based on danger to the community, and so must meet its burden of proof by clear and convincing evidence. 18 U.S.C. § 3142(f). Section 3142(g) sets forth factors the court must consider.

Mr. Lawson is not charged with a violent crime; he is charged with two counts of possessing a firearm as a felon and with one count of possessing an unregistered short-barreled shotgun. No statutory presumption assists the government in this motion. Mr. Lawson's physical condition is modest. He is 51

years old, has had two heart attacks, and has bad hips and a bad back; on the other hand, he was working in a factory at the time of his arrest. His mental condition is questionable: the court heard uncontradicted evidence of a suicide threat in October; Mr. Lawson attempted suicide once before when facing serious criminal charges; he is not undergoing counseling.

    Mr. Lawson is a lifelong resident of this area and has lived for 33 years in his current residence. His mother lives here, as does his wife, from whom he is separated. Despite the separation, his wife posted his bond in a pending state criminal case, accompanied him to the police department during the beginnings of this case, and has been in frequent contact with Mr. Lawson's federal counsel. Mr. Lawson was employed for 14 months at his most recent place of employment. The record contains no suggestion of substance abuse in recent years. The record contains no indication of any record of non-appearance in prior criminal cases. He was released on a $1,500 bond in his current state case, a point that is pertinent not because of decisions made by the state court (different laws and standards govern pretrial release in the Indiana courts), but rather because he remained in the area in the weeks between posting that bond and entering federal custody.

    Mr. Lawson has a prior felony conviction for a crime of violence: he was convicted in 1994 of child molesting. That offense is dissimilar to his federal charges, but police who searched his home for ammunition (with his consent) found what they believe may constitute child pornography. The record now before

2

the court (which may be different at trial) indicates that Mr. Lawson possessed several firearms. For several reasons, his possession of those firearms is less indicative of dangerousness than might be so in other cases: these were not handguns or assault weapons (though one is a short-barreled shotgun); Mr. Lawson had little ammunition; the weapons were not well-maintained, fired recently, or possessed for long. Still, when evaluating danger to the community, a court cannot ignore the possession of firearms.

Mr. Lawson did not register personally as a sex offender, and now faces a state felony charge for that failure. He explains that the Department of Correction registered him (albeit inaccurately, because it omitted the "Jr." from his name), and that the county probation office and sheriff's office told him he didn't need to register the new address he acquired when the City of Mishawaka annexed property that included his residence. Whether those issues affect his criminal liability is a matter for the state courts to resolve under state law with which this court is inexpert, but while the combination of factors gives the failure to register personally less weight in determining danger to the community, the court cannot ignore the existence of pending state felony charges.

Of considerably greater weight is that Mr. Lawson lied to police officers who interviewed him after police took custody of his guns. Mr. Lawson was cooperative in that interview, but also was cooperatively dishonest, giving a false social security number and denying that he had a prior criminal record. Two possible reasons for that dishonesty come to mind. Mr. Lawson may have known that his

3

prior felony conviction made it illegal for him to have the firearms, but he wanted them back from the police, so he misled them as to his identity as a felon. Or, perhaps, he wanted the firearms back at any cost in light of a threat said to have been made a few days earlier. In either event, it seems apparent that he wanted the guns back.

The parties dispute whether a threat was made a few days before that interview. The government contends that the police first were called by friends of Mr. Lawson—a man named Belinski and two men named Fry—because Mr. Lawson was distraught because of his pending divorce, was contemplating suicide, and had weapons. The police found Mr. Lawson on the road and conducted a felony stop with sidearms drawn and brandished. Mr. Lawson agreed to go to Madison Center for evaluation, and said Mr. Belinski could take his firearms for safekeeping. Mr. Belinski accompanied police to the Lawson residence and (most of) the guns were found, but it developed that Mr. Belinski was a convicted felon, and so could not take the firearms. The Mishawaka police took them to the police station for safekeeping.

Mr. Lawson checked out of the Madison Center after speaking to a counselor. Police received a phone call from Scott Fry (one of Mr. Belinski's roommates), who reported that Mr. Lawson had called, upset about his guns having been taken from his residence. According to Mr. Fry, Mr. Lawson said that if he didn't get his guns back by 5:00 a.m., he would hurt someone, and if that didn't work, he would take down the Mishawaka police station.

4

Mr. Lawson denies having made that threat. His cross examination suggested that a homosexual relationship between Mr. Belinski and Mr. Fry may have provided some sort of motive to accuse Mr. Lawson falsely. Assuming the existence of such a relationship (which cannot be said to have been proven during the hearing), it isn't customary for a convicted felon to call police to invite officers into the home he shares with a same-sex lover—much less to do so twice in the same night. By all accounts, Mr. Lawson was terribly upset that night, and the court doubts the clarity of his memory. The court credits the accuracy of Mr. Fry's report over Mr. Lawson's recollection, and finds that Mr. Lawson made the threat against Mr. Fry and his roommates and the Mishawaka police.

Mr. Lawson doesn't deny having threatened suicide that evening. Of course, the inquiry under the detention statute is whether the defendant poses a danger to others or to the community, not to himself. 18 U.S.C. § 3142(e).

Finally (with regard to the factors in 18 U.S.C. § 3142(g)), the evidence against Mr. Lawson in this prosecution appears—at this early stage in the proceedings—to be very strong. In addition to the police witnesses, the government may also be able to present the testimony of Mr. Lawson's mother (who said she took the firearms to Mr. Lawson's residence) and friends (to whom he had reportedly shown the firearms before that night). That Mr. Lawson's threat went to persons who are likely witnesses in this case is especially troubling.

In argument at the hearing, Mr. Lawson's counsel asked how much weight should be attributed to threats made in the span of hours during a time of great

5

stress, and the question is a good one. This record contains much to suggest that Mr. Lawson poses modest risk to the community. Some risk must be conceded with respect to one convicted of child molesting, and who has not personally registered with the sex offender registry. But otherwise, he has led five decades of a largely peaceful life with his family, supporting himself, in this community.

Yet even when it is recognized that the threat of violence to others was a one-time event, it remains that the defendant before the court is a convicted violent felon who did not register himself as such in the sex offender registry and who continued to possess something that (at best) could be mistaken for child pornography, who faces felony charges in state court, who threatened bodily harm to police officers and lay persons who may be witnesses against him, who possessed several firearms when he made that threat, and who (days after the threat) lied to police in an apparent attempt to regain those firearms. In light of these circumstances, the court cannot conceive of a set of conditions of pretrial release that can provide reasonable assurance of others' safety.

The government has met its burden of proving, by clear and convincing evidence, that no combination of conditions of pretrial release can reasonably assure the safety of other persons and the community. The court AFFIRMS the magistrate judge's order of pretrial detention.

The defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

The defendant shall be afforded reasonable opportunity for private consultation with counsel. Upon order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

    SO ORDERED.

    ENTERED:   December 2, 2005


                                     /s/ Robert L. Miller, Jr.
                                     Chief Judge
                                     United States District Court

cc:   C. Lawson
      R. Truitt
      J. Barrett
      USPTSO
      USM